UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELLE M. LUPOLD,** | Civ. No. 2:13-cv-2696 (KM) |
| **Plaintiff,** | |
| v. | **OPINION** |
| **COMMISSIONER OF SOCIAL SECURITY,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

      Michelle Marie Lupold brings this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to review a final decision of the Commissioner of Social Security that denied her applications for Title II disability insurance benefits ("DIB"). Lupold alleges that she is entitled to disability benefits because she is unable to engage in substantial gainful activity due to severe impairments, including fibromyalgia, chronic and severe pain, major depressive disorder, hip pain, and back pain. Docket No. 1 ("Compl.") ¶ 6.

      For the reasons set forth below, the Commissioner's decision is affirmed.

**I. BACKGROUND**

      Plaintiff, Michelle Marie Lupold, filed her Complaint in this Court on April 26, 2013 to appeal the final ruling of the Commissioner denying her disability benefits.

      On January 6, 2010, Lupold filed a Title II application alleging a disability onset date of June 19, 2006. Her claim was originally denied on July 7, 2010 and on reconsideration thereafter. On July 28, 2011, she appeared for a hearing before Administrative Law Judge ("ALJ") George C. Yatron. On August 5, 211, the ALJ determined that Lupold was not disabled. The Appeals Council denied review of the ALJ's decision, rendering ALJ Yatron's decision the final decision of the Commissioner.

## II. DISCUSSION

Lupold's claims for DIB were denied by ALJ Yatron.

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. § 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. § 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

On appeal to this Court, Lupold submits that the Commissioner's decision is not supported by substantial evidence. Specifically, she raises four claims of error: (1) The ALJ erred in not fully addressing the consultative examination report authored by Mark Greenberg, Ph.D.; (2) The ALJ erred in determining that the Plaintiff suffered from "moderate" limitations in social functioning, but failing to include any restrictions related to this limitation in the formulation of RFC; (3) The ALJ erred in his determination of the Plaintiff's credibility; and (4) The ALJ erred in assigning little weight to the opinion of Dr. Anderson. Docket No. 8 ("Pl. Br.").

### A. Standard of Review

As to legal issues, this Court's review is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to the factual findings of the Administrative Law Judge ("ALJ"), however, this Court is directed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *accord Richardson v. Perales*, 402 U.S. 389, 401 (1971).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard

2

be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)).

After review of ALJ Yatron's analysis, pursuant to the five-step legal framework, I find that the ALJ's opinion is supported by substantial evidence. Accordingly, I will affirm his opinion of August 5, 2011.

### B. The ALJ's Decision

After performing the sequential five-step analysis, the Administrative Law Judge Yatron denied Lupold's claim of benefits on August 5, 2011. The ALJ found that Lupold could perform light work without detailed instructions and was not disabled. Lupold now submits that ALJ Yatron's denial was in error and that the decision is not supported by substantial evidence. The Commissioner of Social Security (the "Commissioner") maintains that ALJ Yatron's denial of benefits is supported by substantial evidence.

**STEP 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

At Step 1 of the sequential evaluation, ALJ Yatron found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 19, 2006. R 31.

**STEP 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

At Step 2, ALJ Yatron found the following severe impairments: fibromyalgia and major depressive disorder. R 31.

**STEP 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is

3

automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

At step 3, ALJ Yatron found that Lupold did not have an impairment or combination of impairments that met or medically equaled a listened impairment.

The ALJ found that Lupold did not meet the "paragraph B" criteria of listing 12.04 of 20 CFR Part 404, Subpart P, Appendix 1 because her mental impairments did not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation. He found that Lupold had moderate restrictions in daily living and that the majority of these limitations stemmed from her physical limitations and not from her mental health impairment. R 31. The ALJ also found that she had moderate difficulties with social functioning and in regard to concentration, persistence, or pace. R 32. He also found that her limitations did not meet "paragraph C" criteria. R 32.

> **STEP 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five. Up to this point (steps 1 through 4) the claimant has borne the burden of proof.

At step 4, ALJ Yatron ruled that Lupold had a residual functional capacity ("RFC") to perform the full range of light work with no detailed instructions. R 33-37.

The ALJ considered Lupold's subjective allegations as to her limitations and pain. Lupold alleged that her fibromyalgia has worsened with age. She can only sit and stand for short periods and suffers from severe back and hip pain. She cannot lift a gallon of milk because of the pain. It takes her an entire day to clean one room of the house due to her "need to sit and stand constantly." She alleges that she does not go out, forgets things often, and has difficulty sleeping. R 33 (citing Exhibit 2E, 4E). In her Disability Report, she stated that she could only walk for about five minutes, stand for five to ten minutes, and sit for fifteen minutes at a time. R 33 (citing Exhibit 7E). The ALJ summarized her complaints: "she alleged her pain is the worst pain she has ever had, that it worsens with age, is head to toe, occurs all the time and never goes away." R 34 (citing Exhibit 4E).

4

Considering the entirety of the evidence, the ALJ concluded that Lupold's statements regarding the intensity, persistence, and limiting effects of her symptoms are not credible to the extent they are inconsistent with the determined RFC. R 34. The ALJ found her allegations inconsistent with Lupold's acknowledgement that she cares for pets, cleans, cooks for a grandchild, prepares meals on a daily basis, and does light cleaning and laundry. Despite saying she could only walk for five minutes, she reportedly shops for groceries and despite alleging she could only sit for fifteen minutes, she reportedly drives. R 34 (citing Exhibit 4E). Lupold's husband reported that she cooks, cleans, uses the computer, watches television, washes dishes, and takes care of the house. R 34 (citing Exhibit 5E).

Next, the ALJ found that the record did not contain evidence of limitations stemming from her diagnoses of fibromyalgia and depression. The ALJ did a thorough review of the medical evidence and concluded that there was little objective evidence indicating that Plaintiff is limited by her impairments, and that it was inconsistent with her subjective complaints of pain.

After reviewing Lupold's medical record, including both objective and opinion evidence, the ALJ concluded that Lupold was capable of performing light work without detailed instruction. He noted that the RFC assessment was supported by objective medical evidence and the opinions of Drs. Bonita, Greenberg, and Barrett. The ALJ also noted that he would give Lupold the "benefit of the doubt" regarding her physical restrictions resulting from fibromyalgia even though she had received little treatment aside from medication (and possibly physical therapy). Because of her major depressive disorder, he limited her to work not requiring detailed instruction.

After assessing Lupold's RFC, the ALJ found that it would not permit her to perform her past work as a manager, which is skilled work performed at the light exertional level. Lupold is limited to unskilled work at the light exertional level. R 37.

Below is a summary of the objective medical evidence considered by the ALJ:

- In March 2008, Lupold saw Dr. Alan Keiser, who conducted a physical exam that revealed normal mobility and curvature of the spine and a full range of motion in her bilateral shoulders and hands, though he did report tenderness in her hips. R 34. At the time, she was not taking

5

medication, but Dr. Keiser prescribed Lyrica and Xanax. R 34 (citing Exhibit 1F).

- A September 2008 hip x-ray revealed no acute osseous abnormality; a chest x-ray that month was also normal. R 34 (citing Exhibits 2F, 3F).

- In December 2009, Lupold went to Premier Immediate Medical Care with complaints of pain related to fibromyalgia. She was not taking any medication at the time. Inspection of her hips revealed no abnormalities, but strength was decreased. She was prescribed medications, but refused narcotic pain medication due to a fear of needles. R 34–35 (citing Exhibit 4F).

- Soon after the December 2009 emergency care visit, she presented to Dr. Sucharitha Shanmugam. Dr. Shanmugam noted that Lupold was taking Naproxen at the time. A physical examination revealed a normal spine and full range of motion of her bilateral shoulders, elbows, hands, knees, and hips, despite her allegations of bilateral hip pain. Dr. Shanmugam reported that her pain had no aggravating factors. The Dr. gave her a trial of Cymbalta, prescribed physical therapy for myofascial conditioning, and discontinued Naproxen and Trazadone prescriptions. During the visit, Lupold asked if she could get disability benefits. R 35 (citing Exhibit 5F).

- An April 2010 consultative examination was performed by Dr. Mark Greenberg, Ph.D., who reported that she had never been seen by a mental health professional. She had been prescribed Xanax by her family physician, but no longer was taking it. She also stopped taking Cymbalta due to the cost. Dr. Greenberg noted it was difficult for her to sit during the evaluation and that she had difficulty straightening her knees while attempting to stand. He reported that her affect was consistent with moderate-to-severe depression and anxiety. Her abstract reasoning skills were good, but her concentration was poor. He diagnosed her with "major depressive disorder, single episode, severe." He recommended that her primary physician consider giving Lupold a prescription for a lower-cost generic antidepressant and that the physician consider referring her to psychotherapy. R. 35–36 (citing Exhibits 7F, 8F).

- In October 2010, Lupold's treating physician, Dr. John Anderson, M.D., noted Lupold's fibromyalgia, but made no notes about her limitations

6

resulting from the condition. In February 2011, Dr. Anderson noted her mood disorder. R 36 (citing 11F).

The ALJ also considered the following opinion evidence:

- In March 2010, Dr. Louis Bonita, M.D., on behalf of the state agency, prepared an RFC assessment. Dr. Bonita noted diagnoses of fibromyalgia and obesity, but opined that she could do a full range of work at the medium exertional level. The ALJ assigned "great weight" to this opinion, which he found to be consistent with the medical evidence. R 36 (citing Exhibit 6F).

- In April 2010, Dr. Greenberg opined that Lupold had "marked limitations in understanding, remembering and carrying out detailed instructions and in social functioning." The ALJ assigned partial weight to this opinion evidence, noting that while assigning "great weight" to the portion of the opinion noting Lupold's difficulty with detailed instructions, he found that Lupold's social functioning difficulties were not "marked." Instead, he found that she had moderate social functioning limitations and noted her ability to interact and care for her grandson and her ability to go out in public, such as going to the grocery store. R 36 (citing Exhibit 8F).

- In May 2010, Joseph Barrett, Ph.D., on behalf of the state agency, noted a diagnosis of major depressive disorder and opined that Lupold had moderate limitations in activities of daily living, social functioning, concentration, and persistence or pace. He agreed with Dr. Greenberg that Lupold would benefit from formal mental health treatment, but opined that her physical issues were primary. He concluded that Lupold could complete simple tasks. He found that she had a "marked limitation" in her ability to carry out detailed instructions, but did not find any evidence of limitations regarding her ability to: maintain attention/concentration for extended periods; perform activities within a schedule; maintain regular attendance; and work a normal workday/workweek without interruptions. R 36 (citing Exhibits 9F, 10F). The ALJ assigned "great weight" to Dr. Barrett's opinion because he had the opportunity to examine Lupold's medical records and because his opinion was consistent with the objective medical evidence, specifically noting the lack of any mental health treatment and the absence of any indication of an ability to perform simple, unskilled work. R 36.

- In July 2011, Dr. Anderson, Lupold's treating physician, completed a Fibromyalgia RFC Questionnaire. Dr. Anderson noted bilateral spinal, chest, shoulder, arm, hand/finger, hip, leg, and knee/ankle/feet pain. Dr. Anderson noted that Lupold's pain would constantly interfere with her ability to concentrate. He limited her to standing/walking less than 2 hours in an 8-hour workday and to sitting 4 hours in the same period. Lupold would need a sit/stand option and would require numerous breaks throughout the day (Exhibit 12F). The ALJ assigned Dr. Anderson's opinion "little weight," finding it inconsistent with the other medical evidence, including Dr. Shanmugam's observations. He characterized Dr. Anderson's findings as conclusory and found that the treatment pursued by Dr. Anderson was not consistent with what one would expect if Lupold were disabled.

**STEP 5:** The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); see *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

At Step 5, ALJ Yatron considered Lupold's RFC, age, education, and past work experience and concluded that she was "not disabled" within the framework of Medical-Vocational Guidelines, Rule 201.25.

### C. Discussion of the ALJ's Analysis

The ALJ's Step Four analysis is the focus of Lupold's contentions on appeal. The overarching issue is whether the ALJ's RFC assessment is supported by substantial evidence. I consider her four contentions in order.

> **Contention 1: The ALJ Erred in Not Fully Addressing the Consultative Examination Report Authored by Mark Greenberg, Ph.D.**

Plaintiff submits that the ALJ failed to explicitly consider Dr. Greenberg's opinion that Plaintiff had marked limitations in her ability to function socially (i.e. her ability to appropriately interact with the public, supervisors, and co-workers and her ability to respond appropriately to changes in a routine work

8

setting). Plaintiff submits that this evidence, if credited, would require a finding of disability pursuant to SSR-96-9p.

SSR-96p provides that "[a] substantial loss of ability to meet any one of several basic work-related activities on a sustained basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), will substantially erode the unskilled sedentary occupational base and would justify a finding of disability." These work-related activities include: "Understanding, remembering, and carrying out simple instructions"; "Making judgments that are commensurate with the functions of unskilled work--i.e., simple work- related decisions"; "Responding appropriately to supervision, co-workers and usual work situations"; and "Dealing with changes in a routine work setting." SSR-96p.

Dr. Greenberg's consultative report noted that Plaintiff had "marked" limitations in social functioning. Subsumed in this general finding is a more specific conclusion that that Plaintiff had "marked" limitations in interacting appropriately with the public, supervisors, and co-workers, in her ability to respond appropriately to work pressures in a usual work setting, and in her ability to respond to changes in a routine work setting. R 226. Dr. Greenberg concluded that a medical finding that Lupold was "very depressed, socially withdrawn" supported her social functioning assessment. *Id.*

Lupold's position "is that the ALJ did not adequately consider Dr. Greenberg's limitations in the decision, and did not give good reasons for their rejection." Docket No. 13 ("Pl. Reply") at 4. She submits that the ALJ failed to explicitly weigh this probative evidence and to provide some explanation for rejection such evidence when formulating her RFC, as required under case law and regulations. The Commissioner replies that the ALJ did consider Dr. Greenberg's assessments, but discounted them because he found they were not entirely consistent with the medical record. I agree.

While an ALJ need not itemize every piece of evidence considered, the ALJ is required to address evidence that, if considered, would lead to a contrary result. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (citations omitted) (explaining that the ALJ must "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition" and remanding for failure to mention and refute contradictory evidence). The ALJ may "properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Id.* (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)); *see also Burnett v. Comm'r of Soc. Sec. Admin.*, 220

9

F.3d 112, 122 (3d Cir. 2000) (remanding due to ALJ's failure to "review all of the pertinent medical evidence" and explain "his conciliations and rejections.").

Here, the ALJ determined that Lupold suffered from moderate limitations in social functioning. R 36. The ALJ specifically addressed the medical evaluation completed by Dr. Greenberg and adopted Dr. Greenberg's opinion that Lupold had marked difficulty with detailed instructions. The ALJ determined, however, that, contrary to Greenberg's assessment, Lupold's ability to function socially was only moderately impaired. The ALJ noted that Dr. Greenberg attributed her difficulties and limitations to her depression, impaired concentration, and socially withdrawn tendencies. R 36. The ALJ assigned "partial weight" to Dr. Greenberg's opinion, but found that Lupold's social functioning difficulties did not rise to the stated level of severity. "To the contrary," the ALJ concluded, "the claimant has moderate limitations in social functioning," noting "her ability to interact and care for her grandson and ability to go out in public, including the grocery store." R 36.

This conclusion of the ALJ was also supported by Dr. Barrett's opinion, to which the ALJ assigned "great weight." Dr. Barrett found that Lupold had moderate limitations in activities of maintaining social functioning. R 36 (citing Exhibits 9F, 10F). The ALJ's opinion also noted that she will sometimes sit outside, but will not go out when she is having a bad day. She acknowledged that she spent time with others depending on how she feels on a particular day. R 32 (citing Exhibit 4E). Her husband reports that she cares for her grandson 50% of the year, including making him lunch, reading to him, and sitting with him. She communicates with others through telephone and computer conversations. R 32 (citing Exhibit 5E). Based on this evidence, the ALJ concluded that Lupold had moderate social functioning difficulties.

The ALJ is permitted to separately assess separate medical opinions found in a single medical source statement, as he did here, because it "may be necessary to decide whether to adopt or not adopt each one." 20 CFR § 404.1527(d). Moreover, while the ALJ did not separately itemize each "limitation" listed under the general social function heading, he did cite to and address Dr. Greenberg's finding that Lupold suffered from "marked" limitations in her social functioning. The specific limitations (ability to work with others and to respond to changes in the workplace) all fall under the general category of social functioning. This is not a case in which the ALJ overlooked probative evidence or failed to explain his relative weighting of different components of the evidence. Rather, the ALJ looked at all the evidence, but assigned different

10

weight to different opinions in light of other evidence of record. Absent legal error, I must defer to that weighing process so long as the ALJ's assessment is supported by substantial evidence. Substantial evidence of a finding of moderate social function limitations exists. I therefore will not remand this case on the ground that the ALJ failed to fully consider the opinion evidence of Dr. Greenberg.

> **Contention 2: The ALJ Erred in Determining that the Plaintiff Suffered from "Moderate" Limitations in Social Functioning, but Failing to Include Any Restrictions Related to This Limitation in the Formulation of RFC**

As already discussed, the ALJ found that Lupold had moderate limitations in social functioning. R 36; *see* Section II.C.1, *supra*. The ALJ limited Lupold to light work with no detailed instruction.

Lupold submits that the ALJ erred in failing to assign any restrictions related to social functioning in his formulation of her RFC. Even a moderate limitation, she says, must be considered in the RFC formulation; SSR 96-8p provides that "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Lupold argues that, had the ALJ included some restrictions related to social functioning in the RFC, a disability finding would have been likely. Moreover, she contends that the matter should be remanded so that the ALJ may hear testimony from a vocational expert regarding the impact her social limitations had on her ability to work. Pl. Br. at 13–14. In short, she submits that social limitations were erroneously excluded from the RFC.

The Commissioner responds that Lupold's moderate social functioning limitations do not significantly diminish the range of work she can perform. (As to this point, I assume the propriety of the finding of moderate social functioning. *See* Section II.C.1, *supra*.)

Lupold is correct that an ALJ must *consider* any impairment-related limitations created by an individual's response to demands of work as part of the RFC assessment. *See* SSR 85-15. But the ALJ is not required to conclude that every limitation affects the RFC of a claimant. *See* SSR 83-14 ("Where it is clear that the additional limitation or restriction has very little effect on the exertional occupational base, the conclusion directed by the appropriate rule in Tables No. 1, 2, or 3 would not be affected."). Here, the ALJ concluded that

Lupold's limitations did not mandate any further restrictions. This conclusion was based on substantial evidence. I will not remand on this ground.

### Contention 3: The ALJ Erred in his Determination of the Plaintiff's Credibility

Plaintiff contends that the ALJ improperly discounted her complaints of pain as being inconsistent with the medical evidence. She submits that the ALJ mischaracterized the Function Reports completed by Lupold and the Third Party Function Report completed by Lupold's husband. He also failed to cite her oral testimony made during the hearing, necessitating remand. The Commissioner responds that the ALJ considered Lupold's subjective complaints regarding her pain and provided a thorough discussion of why he did not find them entirely credible.

The ALJ's opinion contains a full consideration of Lupold's subjective allegations as to her limitations and pain. He noted that Lupold alleged that her fibromyalgia has worsened with age. He noted her statements that she can only sit and stand for short periods; that she suffers from severe back and hip pain; that she cannot lift a gallon of milk; that it takes her an entire day to clean one room of the house because of her "need to sit and stand constantly"; that she does not go out; that she forgets things often; and that she has difficulty sleeping. R 33 (citing Exhibit 2E, 4E). The ALJ notes Lupold's statement in her Disability Report that she could only walk for about five minutes, stand for five to ten minutes, and sit for fifteen minutes at a time. R 33 (citing Exhibit 7E). Also noted are Lupold's statements that she forgets things, has difficulty sleeping because of pain, and does not go anywhere on a regular basis. The ALJ summarized Lupold's complaints thus: "she alleged her pain is the worst pain she has ever had, that it worsens with age, is head to toe, occurs all the time and never goes away." R 34 (citing Exhibit 4E).

After a review of Lupold's statements, however, the ALJ compared them to the medical evidence and other objective evidence. He concluded that Lupold was not as limited as she claimed to be. R 34.

As for non-medical evidence, the ALJ particularly noted the inconsistency with Lupold's acknowledgement that she cares for pets, cleans, cooks for a grandchild, prepares meals on a daily basis, and does light cleaning and laundry. Despite saying she could only walk for five minutes, she reportedly shops for groceries and despite alleging she could only sit for fifteen minutes, she reportedly drives. R 34 (citing Exhibit 4E). Lupold's husband

12

reported that Lupold cooks, cleans, uses the computer, watches television, washes dishes, and takes care of the house. R 34 (citing Exhibit 5E). The ALJ also noted more general inconsistencies in information Lupold provided, which he noted may "suggest that the information provided by the claimant generally may not be entirely reliable". R 35.

As for medical evidence, I incorporate the summary at pp. 5-7, above, as well as the discussion of Contention 1 at pp. 8-11, and do not repeat it here.

Accordingly, the ALJ had a basis for finding an inconsistency between the objective evidence and Lupold's allegations concerning the intensity, persistence, and limiting effects of the symptoms alleged. That weighing of Lupold's credibility was not erroneous; it did not run afoul of the standards governing the ALJ's review or this Court's standard of review.

Subjective complaints must be supported by clinical evidence, including medical signs or laboratory findings that shows the existence of a severe impairment that could reasonably be expected to cause the symptoms alleged by the claimant. 20 CFR §§ 404.1529(b), 416.929(b); SSR 96-7p. Where a claimant alleges symptoms that appear to be greater in severity than what the medical evidence suggests, the Commissioner may consider other evidence, including the claimant's daily activities, treatment, and nature and extent of the symptoms alleged. 20 CFR 404.1529(c)(3), 416.929(c)(3), SSR 96-7p. The ALJ must give serious consideration to complaints of pain, even when such complaints are not fully supported by the objective medical record, but need not accept without questioning the credibility of these complaints. *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citations omitted). Ultimately, the ALJ has discretion to evaluate the claimant's credibility in light of the totality of the objective evidence. *Id.*

Here, the ALJ acknowledged and followed the mandatory two-step process regarding a claimant's symptoms: (1) determining whether there was an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms and (2) evaluating the intensity, persistence, and limiting effects of these symptoms to determine the extent to which they limit Lupold's ability to do basic work activities. R 34.

The ALJ concluded that Lupold's impairments could reasonably be expected to cause the alleged symptoms. However, the objective medical evidence indicated that Lupold was not as limited as he claimed to be. R 34. He also stated a basis for his conclusion that Lupold's subjective complaints were

13

not wholly credible. *See LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citing *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981)) (If the ALJ concludes that testimony is not credible, the ALJ must indicate the basis for that conclusion in his decision); *see also Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (citing *Green v. Schweiker*, 749 F.2d 1066, 1069–70 (3d Cir. 1984); 42 U.S.C. § 423(d)(3); 20 CFR §§ 404.1528, 404.1529) (reasoning that a claimant did not "meet the statutory definition of disability" where he "failed to submit objective medical tests to show that his medical condition and residual capabilities satisfy the Social Security regulations" because "[h]is subjective complaints must be substantiated by medical evidence").

Plaintiff's argument here that the ALJ either ignored or mischaracterized significant portions of her testimony is not well-founded. While it is certainly true that the ALJ did not repeat every word of Lupold's allegations of pain and limitation, his summary reveals that he was thoroughly familiar with them. That he did not credit all of Lupold's statements is not evidence that he "ignored" them. It is true that the ALJ cited primarily, not to Lupold's hearing testimony, but to her Disability Report, Function Reports, and the Third Party Function Report completed by her husband (Exhibits 2E, 4E, 5E, 7E). This is a quibble; Lupold does not cite any testimony that conflicts with or meaningfully supplements her statements in the reports in regard to her pain.

Ultimately, the ALJ weighed the evidence before him, including her daily activities, treatment, medications taken, and Plaintiff's subjective allegations, and determined that Plaintiff's allegations were not credible to the extent that they conflicted with the entirety of the objective evidence. Such balancing of evidence is well within the ALJ's discretion and competence. Disagreement with the balance he struck is not a basis for remand.

### Contention 4: The ALJ Did Not Give Enough Weight to the Opinion of a Treating Physician, Dr. Anderson

In July 2011, Dr. Anderson, Lupold's treating physician, completed a Fibromyalgia RFC Questionnaire. Dr. Anderson noted bilateral spinal, chest, shoulder, arm, hand/finger, hip, leg, and knee/ankle/feet pain. Dr. Anderson also noted that Lupold's pain would constantly interfere with her ability to concentrate. He limited her to standing/walking for less than two hours in an eight-hour workday and to sitting for four hours in the same period. Lupold, he wrote, would need a sit/stand option on the job and would require numerous breaks throughout the day. Dr. Anderson also noted aggravating factors

precipitating pain, such as weather changes, stress, fatigue, movement/overuse, and the cold. (Exhibit 12F).

The ALJ assigned "little weight" to Dr. Anderson's Questionnaire because he found it to be "inconsistent with the other evidence, including Dr. Shanmugam's observations, as well as other objective medical findings." R 37. For instance, while Dr. Shanmugam observed that Lupold had no aggravating factors precipitating her pain, Dr. Anderson found many aggravating factors. He found Dr. Anderson's report conclusory and that it failed to explain "such severe limitations" and noted that the course of treatment recommended by Dr. Anderson to be inconsistent with what one would expect "if the claimant were truly disabled." R 37.

Plaintiff submits that Dr. Anderson's report was consistent with both Dr. Shanmugam's report and the other evidence on record. She also contends that the ALJ erroneously considered Dr. Anderson's status as treating physician as a factor weighing against granting weight to Dr. Anderson's opinion. The ALJ, as submitted by Lupold, rejected the opinion of Anderson based on his speculation regarding the doctor's motivations for offering a supportive opinion, in contravention of the applicable regulations and case law. The Commissioner counters that the ALJ properly considered Dr. Anderson's opinion and that it was in the ALJ's discretion to weigh any conflicting medical evidence.

A treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." SSR 96-2p. Moreover, the treating physician's opinion will not be given controlling weight "unless it also is 'not inconsistent' with the other substantial evidence in the case record." *Id.*; *see also Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (citations and internal quotations omitted) (reasoning that an "ALJ may not make speculative inferences from medical reports' and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion"). And of course, even if the treating physician's opinion is not accorded controlling weight, the ALJ must weight it, like any other medical opinion, in light of the factors set forth in 20 C.F.R. Section 404.1527(d).

The ALJ's finding here is supported by substantial evidence. The ALJ supported his rationale for giving less weight to Dr. Anderson's opinion, *i.e.*,

15

that it "departs substantially from the rest of the evidence of record."[1] The ALJ did not disregard the diagnosis of fibromyalgia, which accorded with other evidence, but did dispute Dr. Anderson's description of the severity of the limitations, based on medical and other objective evidence.

That other medical evidence, while confirming the fibromyalgia diagnosis (which the ALJ found to be an impairment), did not support the severity of limitations as found by Dr. Anderson. Dr. Shanmugam's physical examination of Lupold revealed a normal spine and full range of motion of her bilateral shoulders, elbows, hands, hips, and knees. Dr. Shanmugam also did not find any aggravating factors. Exhibit 5F. Dr. Anderson found several aggravating factors and found that Lupold's ability to manipulate her neck, hands, fingers, and arms were significantly impaired. R 252. The ALJ also gave great weight to Dr. Bonita's RFC assessment. Dr. Bonita diagnosed Lupold with fibromyalgia and obesity, but opined that she could do a full range of work at the medium exertional level and that she could sit or stand/walk for about six hours in an eight-hour workday. Exhibit 6F. The ALJ also assigned great weight to Dr. Barrett's assessment of Lupold. Dr. Barrett found that she was moderately limited in activities of daily living, in social functioning, and in maintaining

---

[1] The ALJ also made an observation about possible sources of unreliability in physicians' opinions:

> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another. Another reality that should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients' requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

R 37. I do not think that this is indicative of a legal error, *i.e.*, giving *less* weight to an opinion because it comes from a treating physician. The remark is offered as a generality, by way of explaining why a treating physician may give an opinion that turns out to be unworthy of deference. The ALJ explicitly acknowledges that he is not relying on specific evidence that such sympathy or importuning occurred in this case. The rationale that the ALJ *does* state for (to some degree) discounting the treating physician's opinion is that it "departs substantially from the rest of the evidence of record, as in the current case." That is a permissible basis.

concentration, persistence, or pace. Dr. Barrett concluded that her physical issues seemed primary and that she was capable of simple tasks. Moreover, Dr. Keiser's physical exam revealed normal mobility and full range of motion, Exhibit 1F, and a September 2008 hip x-ray showed no acute osseous abnormality, Exhibits 2F, 3F.

In short, there is substantial evidence to support the ALJ's conclusion that Dr. Anderson's opinion as to the severity of Lupold's limitations was an outlier, in conflict with the other medical evidence. Absent any legal error, it is the ALJ's responsibility to weigh all evidence and resolve any material conflicts in the evidence. Finding that the ALJ's decision was supported by substantial evidence, I conclude that remand is unwarranted.

## II. CONCLUSION

Lupold's claims of error based on the evidence adduced and evaluated at the hearing before the ALJ fail to show that the ALJ erred as a matter of law or that his decision was not supported by substantial evidence. The denial of Lupold's DIB application is therefore **AFFIRMED**.

An Order will be entered in accordance with this Opinion.

_____
Hon. Kevin McNulty
United States District Judge

Dated: July 31, 2014